Entered: May 6th, 2019
Signed: May 6th, 2019



**ROBERT A. GORDON**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| John Kelly Ihejurobi | * | Case No. 18-13380-RAG |
| Debtor | * | Chapter 13 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| Wells Fargo Bank, N.A. | * |
| Movant/Secured Creditor | * |
| v. | * |
| John Kelly Ihejurobi and Neesha Ihejurobi | * |
| | * |
| Respondents | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION GRANTING
## MOTION FOR RELIEF FROM AUTOMATIC STAY
## <u>AND OVERRULING OBJECTION TO CLAIM</u>

## I.    Background

The Debtor commenced this case on March 14, 2018.[1]  Most of the Debtor's Schedules, and his Chapter 13 Plan (Plan), were filed on April 6, 2018[2] (Dkt. Nos. 18-27).  In  Part 1, subsection 2.1 on Schedule D (Creditors Who Have Claims Secured by Property), the Debtor answered the questions by, among other things, (a) listing an "unknown" secured creditor, (b) identifying the property securing that creditor's claim as "11405 Hunt Crossing Ct., Ellicott City MD 21042" (Hunt Crossing) and (c) valuing Hunt Crossing, and the amount of the claim, each at $1.7 million.[3]  Debtor also indicated that the claim had been incurred in March 2008 and that it arose from, "[a]n agreement [the Debtor] made (such as a mortgage…)" but also noted that the claim was "disputed".

On April 24, 2018, Wells Fargo Bank, N.A. (Wells Fargo) filed an Objection to the Debtor's Plan (Dkt. No. 39).  Wells Fargo asserted in the Objection that it was the holder of the Indemnity Deed of Trust (IDOT) secured by Hunt Crossing and that, among other things, there was a pre-petition arrearage of $757,672.70 owed on the underlying indebtedness.  Wells Fargo therefore requested that confirmation of the Plan be denied.

On May 1, 2018, the Debtor filed an Amended Schedule D (Dkt. No. 40).  Now the Debtor asserted that the total indebtedness secured by Hunt Crossing was in the amount of $1.7

---

[1]  The Debtor has filed three prior cases in this Court beginning with Case No. 01-11662, filed on February 14, 2001, as a Chapter 13.  Debtor's plan was confirmed on March 13, 2002 and the Debtor received a discharge on June 27, 2006.  Debtor was represented by counsel in that case.  Case No. 15-15292 was filed on April 14, 2015 as a Chapter 13 but that case was dismissed on June 2, 2015 because the Debtor failed to complete and submit all of the filings required by law.  The Debtor represented himself in that case.  The Debtor was represented by counsel in Case No. 15-22234, filed on September 1, 2015 as a Chapter 7, and after some fair amount of, "backing and filling", the Debtor received a discharge on February 1, 2017.

[2]  Schedule G was filed on April 11, 2018 (Dkt. No. 30).  However, in contravention of his duty, the Debtor has never filed a Statement of Financial Affairs.

[3]  There is no dispute that Hunt Crossing is both the Debtor's residence and the real estate that is the subject of the dispute decided in this Opinion.

2

million, but he reduced the value of the collateral (and hence the value of the secured claim, in his opinion) to only $900,000. The Debtor persisted in listing the claim as disputed and the creditor as "unknown".

On May 10, 2018, Wells Fargo filed its Proof of Claim (POC). The POC asserted a total indebtedness of $1,765,680.27 and a total pre-petition arrearage of $739,698.87, and supplied a relatively substantial, detailed accounting with the POC. On June 20, 2018, Wells Fargo filed a Motion for Order Granting Relief from Automatic Stay and Co-Debtor Stay that prayed for relief from the automatic stays of 11 U.S.C. §§ 362(a) and 1301(a)[4] (Lift Stay Motion) to secure this Court's permission to continue its previously commenced state court foreclosure of the IDOT against Hunt Crossing (Dkt. No. 54). Among other things, the Lift Stay Motion averred that the Debtor was in arrears for the three, post-petition, monthly payments of $7,817.65 that had come due since March 14, 2018.

Debtor filed his response to the Lift Stay Motion on July 5, 2018 and, beyond a standard litany of admissions and denials as to the substance of each separate paragraph, the Debtor also included a section entitled, "Defenses" (Dkt. No. 57). That section included the assertions that, (a) Hunt Crossing was necessary for the Debtor's "proper reorganization" and (b) the IDOT and the Note were "not enforceable under applicable law", without any further elaboration. Thereafter, on July 24, 2018, the Debtor filed an Objection to Claim 2-1 (Claim Objection) directed at the POC (Dkt. No. 61). The Claim Objection was based upon the proposition that because the Debtor had previously received a discharge in Case No. 15-22234, the filing of the

---

[4] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code, and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

POC violated the statutory injunction of Section 524(a) and was in contempt of the discharge order.  The Claim Objection therefore prayed that the POC be disallowed.[5]

A hearing on the Lift Stay Motion was held on July 27, 2018 (Dkt. No. 68).  At that time, Counsel for Wells Fargo proffered that the Debtor still had not made any post-petition payments, that there was no equity for the estate in Hunt Crossing, and noted other compelling particulars of the debt, including the relatively enormous prepetition arrears.  In turn, Counsel for the Debtor proffered that (a) the Debtor was a real estate agent who was (somewhat curiously) starting a new health care business, (b) the Debtor believed there was a "problem" with the note, but that the precise nature of the problem was "complicated" and therefore the Debtor was not prepared to explain it that day, but he believed the total indebtedness was "too high" and (c) therefore the Debtor had filed the Claim Objection a few days before, but he was not trying to "wipe out" Wells Fargo's lien and instead wanted the Court to adjust the indebtedness down to the value of Hunt Crossing to be able to then secure a loan modification.  The Court permitted the parties thirty (30) days to conduct discovery and scheduled a hearing for October 22, 2018 on the Claim Objection, while rescheduling the hearing on the Lift Stay Motion for October 26, 2018.[6]

On October 5, 2018, Wells Fargo filed a Motion for Summary Judgment (SJ Motion) (Dkt. No. 72) as to its Lift Stay Motion.  Filed as a companion to the SJ Motion was a Motion to Deem Requests for Admission Admitted (Admissions Motion) that requested the Court to deem admitted by the Debtor, the uncontested and unanswered requests for admission served upon him

---

[5] A deficiency notice (DN) was entered by the Clerk at Dkt. No. 62 with respect to the Claim Objection because the Claim Objection did not include the "30-day notice" required by Local Bankruptcy Rule 3007-1.  The DN was never cured and the Claim Objection was stricken from the Docket on August 21, 2018 (Dkt. No. 69).

[6] That hearing was later rescheduled for November 14, 2018 (Dkt. No. 85).

by Wells Fargo.[7]  *See* Dkt. No. 73.  On October 24, 2018, the Debtor filed a Certification of

Responses to Wells Fargo's discovery requests, including the requests for admission, and

indicated that discovery responses had been served upon Wells Fargo the same day (Dkt. No.

83).

On October 25, 2018, the Debtor filed a Motion to Strike Relief [sic] from Stay (Motion

to Strike) (Dkt. No. 84).  The Motion to Strike first averred that the underlying Note had been

materially altered by Wells Fargo's decision, "not to add the unpaid interest to the unpaid

principal" as allegedly required by the Note.  (Motion to Strike ¶6).  It was apparently also

asserted that Wells Fargo's alteration was fraudulent and that both the Note and IDOT

obligations had therefore been discharged and nullified to the benefit of the Debtor.[8]  The Debtor

also averred under the heading, "Deed of Trust/Decencies [sic]" that because there were no

---

[7] The Admissions Motion averred that Requests for Admission had been served upon the Debtor on, or about, August 23, 2018 and as of October 5, 2018, the Debtor had not responded to them.  Therefore, Wells Fargo prayed that the specific requests be deemed admitted.  Under Fed. R. Civ. P. 36(a)(3) (made applicable to this contested matter by Fed. R. Bankr. P. 9014(c)) a matter is admitted, unless within 30 days after service of the request, the party to whom the request is directed, serves upon the party requesting the admission a written answer or objection. Rule 36 is self executing, "[s]ince unanswered requests for admission are automatically deemed judicially admitted [and] no court intervention is required".  *Am. Tech. Corp. v. Mah*, 174 F.R.D. 687, 689 (D. Nev. 1997); *accord In re Aguiluz*, 2011 WL 4485181, at *7 (B.A.P. 9th Cir. July 12, 2011) ("The operation of Civil Rule 36(a)(3) is automatic and self-executing.").  Any matter admitted under the rule is conclusively established unless otherwise ordered by the Court.  *Bailey v. Christian Broad. Network*, 483 F. App'x 808, 809 (4th Cir. 2012).  Co-Debtor, Neesha Ihejurobi filed a response (Co-Debtor Response) to the Admissions Motion on October 23, 2018 (Dkt. No. 82).  The Co-Debtor Response sought an order striking the Admissions Motion because the certificate of service had not been signed.

Under the circumstances of this case, and with knowledge of the Debtor's sloth-like, but eventual, responses to discovery, including his response to the request for admissions, I concluded it would be best not to hold the Debtor to the admissions that would otherwise be established but to instead accept the Debtor's late responses intended to contest crucial facts pending the evidentiary hearing eventually held.  Although the Debtor's defenses have been confirmed to be completely frivolous, the Court still concludes it was better to arrive at that conclusion through live testimony, as opposed to the sterile SJ Motion.

[8] The word "apparently" is used because the literal language of the cited statutory provision only permits nullification of an instrument when fraud is established.  Md. Code Ann., Com. Law §3-407(b) (Md. CL) provides that an "alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration."  Per Md. CL §3-407(a), an "alteration" is, *inter alia*, "an unauthorized change in an instrument that purports to modify in any respect the obligation of a party".  However, the Debtor never alleged any fraudulent behavior on the part of Wells Fargo nor did the Debtor prove any facts that constitute fraud, viewing the entire matter in the most favorable light to the Debtor.

witness signatures (or allegedly, a seal) on the IDOT in connection with the Debtor and Co-Debtor signatures, the applicable statute of limitations should be deemed to be only three years instead of twelve.[9]  The Debtor admitted that he had defaulted under the obligation, averring that event occurred on June 5, 2008,[10] and further asserted that Wells Fargo had commenced its foreclosure proceeding on August 2, 2013.  (Motion to Strike ¶¶14-15).  Therefore, the Debtor asserted, the foreclosure action was barred by the three-year statute of limitations.  Relying upon the above contentions, the Debtor requested that the Lift Stay Motion be denied.  The Debtor also filed, on October 30, 2018, a Motion to Strike "Objection of Wells Fargo Bank, N.A. to Proposed Chapter 13 Plan and Confirmation Thereof" [sic] (Second Motion to Strike) (Dkt. No. 87).  The Second Motion to Strike averred that, (1) the indebtedness had been discharged as a result of the Debtor's prior case, (2) Section 524(a) enjoined Wells Fargo from attempting to collect on the same, (3) Wells Fargo's attempt to do so by filing the POC was a "willful violation" of that statute and (4) Wells Fargo's Objection to the Plan should therefore be stricken and attorney's fees awarded to the Debtor.[11]

At the November 14, 2018 hearing, Counsel for Wells Fargo noted that the Debtor still had not made any of the eight post-petition payments that had come due on the Note, there was no equity in the Property, and in addition to the other seemingly insurmountable roadblocks to a realistic reorganization identified at the last hearing, the Plan provided no means for treating the massive pre-petition arrears owed to Wells Fargo. (November 14, 2018 Transcript at 4-5).  In

---

[9] The Debtor asserted that *Wellington Co. Profit Sharing Plan & Tr. v. Shakiba*, 180 Md. App. 576, 952 A.2d 328 (Md. Ct. Spec. App. 2008), supported that result.

[10] It should be noted here that the June 5, 2008 date is inconsistent with his testimony at a later hearing, where he sought to establish the default as July 2010.

[11] A "revised" Second Motion to Strike was filed on November 6, 2018 (Dkt. No. 92) but the Court cannot discern any substantive difference between the two papers.

response, Counsel for the Debtor asserted that the underlying "accounting" for the indebtedness was "off" because the Note's "Pick-a-Payment" provision had not been applied in the correct manner by Wells Fargo and therefore the monthly principal and interest payments (or perhaps the total amounts due) were somehow skewed in a prejudicial way.  (*Id.* at 5).[12]  Counsel also orally waived the statute of limitations defense but noted that the Claim Objection had been filed (*id.* at 6-7); however, the Court pointed out in response that the Claim Objection (a) did not contest the Note's accounting (as Counsel seemed to now be doing), (b) the ground that *was* raised within the Claim Objection – that the prior discharge of the personal obligation somehow impacted upon the validity of the lien and that Wells Fargo was acting contemptuously by trying to enforce the lien – was purely frivolous under long-settled case law, and (c) in any event, the Claim Objection had been stricken from the Docket due to Counsel's failure to cure the DN.  The Court gave the Debtor five (5) days to file a new objection to the POC and rescheduled both the "yet-to-be filed" objection and the Lift Stay Motion for combined hearing on December 14, 2018.

The Debtor's Objection to Claim 2-1 (Second Objection) was filed on November 19, 2018 (Dkt. No. 97) and it again raised the frivolous assertion that because the indebtedness included in the POC had been discharged, the POC was filed in contempt and was "unenforceable".[13]  Wells Fargo responded on December 4, 2018 and asserted among other

---

[12] The parties made several references to the Note's "Pick-a-Payment" provision.  At some point, the Court began doing the same verbally, in the sense of borrowing the phrase to refer to the Note term under scrutiny.  However, the specific clause in question is not the "Pick-a-Payment" provision included at Paragraph 4(B) but instead is the "Deferred Interest" provision at Paragraph 4(E).  For consistency's sake, the phrase, "Pick-a-Payment" will continue to be used as a shorthand for the entirety of Paragraph 4 of the Note when appropriate.

[13] As will be explained in greater detail, this contention is wholly and completely without merit because the discharge of personal liability for a claim does not stop a lienholder from enforcing the underlying lien against real estate.  Unless otherwise ordered, liens pass through bankruptcy unaffected, *see*, *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150 (1991), and this has been settled bankruptcy law for over twenty-seven (27) years.

things, that (a) the existence of a prior bankruptcy discharge of personal liability does not bar a creditor from pursuing the underlying debt byway of filing a proof of claim in a subsequent bankruptcy case, (b) unless otherwise ordered, a chapter 7 discharge has no effect on a mortgage lien which continues to follow the land, and (c) the IDOT was invulnerably protected from a unilateral, debtor crafted, modification as a result of Section 1322(b)(2)'s anti-modification clause and therefore the lien could not be "stripped" down (Dkt. No. 98).[14]

Then, the night before the scheduled hearing and one month after the prior hearing, the Debtor filed an Objection to Relief from Stay (Lift Stay Objection) (Dkt. No. 102) that asserted relief from the automatic stay should be denied for the following reasons:

(a)     The statute of limitations for filing a foreclosure in Maryland for owner occupied residential property (notwithstanding the presence of a seal on the instrument) had been reduced from 12 years to 3 years, *see* Md. Code Ann., Cts. & Judicial Proceeding §5-102 (Md. CJP), and therefore the foreclosure was time-barred;

(b)     The terms of the Note had been altered by Wells Fargo without the Debtor's consent because unpaid, monthly interest had not been added to the unpaid principal balance as allegedly required by the Note, that this was a material alteration and therefore the Note was no longer enforceable; and

(c)     Wells Fargo failed to provide payment change notices as required by Rule 3002.1.

On the same day, the Debtor filed a "Supplement" to the Lift Stay Objection at Dkt. No. 103.  However, that paper repeated verbatim the text of the Lift Stay Objection, albeit in larger font print.

Loan administration manager and custodian of the records, Alan Flowers, II, testified first for Wells Fargo at the December 14, 2018 hearing.  In summary, Mr. Flowers testified on direct that (a) the accounting submitted in support of the POC was accurate, (b) the last payment in

---

[14] *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106 (1993) (holding that Section 1322(b)(2) prohibits the bifurcation of a claim secured only by a debtor's principal residence by reducing the value of the secured claim to the fair market value of the residence and converting the balance of the claim to unsecured debt).

good funds received by Wells Fargo from the Debtor was made on November 16, 2010 in the amount of $28,410.45, (c) the proceeds of that payment were disbursed over four months' worth of payments due and that a portion of unpaid interest for that period ($1,299.80) had been added to the loan's principal balance, (d) Wells Fargo had attempted to credit a prior payment tendered by the Debtor on June 8, 2010 but that check had been returned for insufficient funds, (e) the Debtor had not made any payments since he filed this case and (f) the "Pick-a-Payment" provision in the Note allows the Debtor to make a smaller monthly payment than is required in a given month, and if that occurs, an obligation is triggered on the part of Wells Fargo to add any unpaid interest to the total, unpaid principal balance.  On cross-examination, Debtor's Counsel sought to establish that, (1) the last payment prior to the November 16, 2010 payment had been made on June 8, 2010 and (2) as there were periods when months passed consecutively without *any* monthly payments made by the Debtor, and as Wells Fargo had not applied all of the unpaid interest for those months to the principal balance, the principal balance was not *inflated enough* and therefore Wells Fargo had unilaterally altered the Note in a material way, and thereby negated the instrument.[15]

The Debtor then testified and on direct examination, made the points that (a) Wells Fargo's foreclosure notice identifies July 2010 as the month of his last payment and (b) the

---

[15] As the Debtor did not prove that Wells Fargo engaged in fraud, the balance of the Debtor's contentions regarding the "Pick-a-Payment" clause are virtually irrelevant because the obligation cannot be nullified without that proof. Yet, even if the Debtor was correct and all unpaid interest should have been added to the total unpaid principal, it appears that would only present a topsy-turvy case of "robbing Peter to pay Paul", meaning that the unpaid interest amounts would be shoveled from one pile (accrued and unpaid interest) to the other (the unpaid principal balance). And since the Debtor has admitted being in default, it is not as if imposing the Debtor's interpretation of the clause would magically absolve the default and put him in the reorganization driver's seat because he presented no viable plan to manage the payment of the debt, however large or categorized.  Nevertheless, and as will be explained later in this Opinion, Wells Fargo's application of the "Pick-a-Payment" provision seems reasonable when the provision's express language, and the overall structure of the Note, are considered.

foreclosure proceeding had been filed on August 2, 2013.[16]  (*See* Debtor's Exh. 2, Maryland

Circuit Court for Howard County Docket (Case No. 13-C-13-095800)).  On cross-examination,

the Debtor acknowledged that he had not made any payments to Wells Fargo since filing this

case and had paid neither real estate taxes nor casualty insurance for Hunt Crossing.  (Dec. 14,

2018 Tr. at 31-32).

At the conclusion of the December 14, 2018 hearing, the Court allowed Wells Fargo

further time to respond in writing to the Debtor's resurrected limitations argument and Wells

Fargo did so on December 28, 2018 (Dkt. No. 105).[17]  In its response, Wells Fargo argued that

(a) under Maryland law, the Note and IDOT were executed under seal, (b) the statute of

limitations for a document under seal is twelve (12) years, (c) the amendment to Md. CJP §5-102

was enacted almost a full year after Wells Fargo's foreclosure action was filed, (d) any exception

that was carved out to change the statute of limitations to three years does not apply to

foreclosure actions but instead targets actions to enforce deficiency judgments, and (e) even if

the exception applied to foreclosures generally, the amendment applies *prospectively* only.

Wells Fargo also requested that an equitable servitude be imposed upon Hunt Crossing so there

could be no further attempts to delay the foreclosure through a subsequent, pointless bankruptcy

filing by the Debtor.  *See In re Yimam*, 214 B.R. 463 (Bankr.D.Md.1997).[18]  The Debtor filed his

---

[16] Hence, by these assertions, the once lifeless limitations argument was reanimated *ala* Dr. Frankenstein's monster.

[17] An amended response was filed to attach the exhibits Wells Fargo neglected to file with the original response (Dkt. No. 110).

[18] As explained in *In re Nelson,* 2006 WL 4671846, at *1 (Bankr. D. Md. July 27, 2006):

> Under *Yimam*, the Court can use the equitable powers contained in 11 U.S.C. §
> 105(a) to impose an equitable servitude on real property if necessary to prevent
> the continuing abuse of the bankruptcy system for the purpose of forestalling
> foreclosure. [*Yiman*, 214 B.R. 463, 465].  An equitable servitude operates to
> deny the protection of the automatic stay under 11 U.S.C. § 362(a) to the subject
> property upon the filing of a subsequent bankruptcy case for a period of time
> sufficient to allow the creditor holding the secured claim to consummate a

response on January 4, 2019 and, reiterated arguments previously made with one exception – the Debtor now asserted that the filing of the Lift Stay Motion commenced a "civil action" and would therefore also be barred by the proffered three year limitations period (Dkt. No. 107).

On January 14, 2019, a hearing was held on the Second Objection to Wells Fargo's POC. Debtor's Counsel again argued that the amount of the POC was erroneously stated because a large part of the claim had been discharged in 2017.  Counsel also asserted that the alleged three-year limitations period applied to the enforcement of the POC, which had been filed more than three years after the default, as yet another separate "civil action", and thus, the POC should be disallowed.  With that, the hearings came to a close.

## II.    Analysis

The Debtor has raised several grounds, collectively as quaggy as a mud bog, in both objecting to the POC and defending the Lift Stay Motion.  Affording the Debtor's shifting, scattered and confusing presentation every benefit of every doubt, his contentions are:

> (a)    As of July 1, 2014, the Maryland 12-year statute of limitations no longer applies to the enforcement (via foreclosure) of residential deeds of trust under seal. Therefore, such instruments must be enforced within 3 years of the date of default and because that did not occur here (at a time *before* the statutory amendment became effective), Wells Fargo may no longer foreclose upon the IDOT;

> (b)    The statute of limitations for the Note was only three years (instead of twelve) because there were no witness signatures on the Note;

> (c)    Wells Fargo materially altered the terms of the Note by failing to properly apply the "Pick-a-Payment" provision;

foreclosure. *Id.* at 466. In analyzing whether such prospective relief is warranted, the Court considers the objective futility of any plan offered by the debtor in the current case, the number of bankruptcy filings affecting the property, the past and present efforts to prosecute these filings, and current status of the underlying debt.

11

(d)     The Note and IDOT have been rendered unenforceable as a
result of the personal discharge received by the Debtor in
his prior bankruptcy case; and

(e)     Wells Fargo did not give the Debtor proper notice of
changes in payment as required by Bankruptcy Rule
3002.1(b).

(a)     *As the Amended Maryland Statute of Limitations Provision does not apply
retroactively, the Controlling Limitations Period is Twelve Years, not Three*

On May 15, 2014, the Maryland General Assembly approved identical bills (House Bill

274 and Senate Bill 708) entitled "Residential Property - Statute of Limitations for Certain

Specialties and Motion for Certain Deficiency Judgments". *See* 2014 Maryland Laws Ch. 592

(H.B. 274). H.B. 274 amended Md. CJP §5-102(a) which sets a twelve-year statute of

limitations for specialties, with instruments under seal generally included under that umbrella.

Section 1 of H.B. 274, among other things, added a new subsection, Md. CJP §5-102(c)(2), that

excludes from the twelve-year statute of limitations:

A deed of trust, mortgage, or promissory note that has been signed
under seal and secures or is secured by owner-occupied residential
property, as defined in § 7–105.1 of the Real Property Article.

Thus, H.B. 274 limits the enforcement of a deed of trust or a promissory note under seal, and

secured by owner-occupied residential property, to the general, three-year statute of limitations

set forth in Md. CJP §5-101. For those who have worked in this area for any appreciable amount

of time before the Great Recession, this change is powerful and significant.

However, in Maryland, "statutes will not be construed as operating retroactively so as to

bar the enforcement of rights existing at the time they were passed, but prospectively so that the

period prescribed will as to such rights begin to run at the time when the statute takes effect".

*Taggart v. Mills*, 180 Md. 302, 306, 23 A.2d 832, 834–35 (1942) (quoting *Ireland v. Shipley*, 165

Md. 90, 166 A. 593 (1933)).  In keeping with this general rule, H.B. 274 Section 7 *specifically provided* that the amendment shall take effect on July 1, 2014 and, per Section 3, the amendment "shall be construed to apply prospectively to any cause of action that arises on or after the effective date of this Act".  2014 Maryland Laws Ch. 592 (H.B. 274).  The General Assembly thus made clear its intention for the amendment to be forward looking and, as a final courtesy, expressly addressed the situation where a cause of action, such as Wells Fargo's, had already accrued.  Section 4 of the Act, instructs that actions arising "before July 1, 2014 must be filed within 12 years after the date the action accrues or before July 1, 2017, whichever occurs first". The prospective nature of the amendment was recognized in *Mortgage Guaranty Insurance, Co. v. Whitaker*, 2018 WL 816823, at *4 (D. Md. Feb. 9, 2018), where the Court held:

> While § 5-102(c)(2) removes the 12 year statute of limitations for actions, such as the present case, on a note or deed of trust for owner-occupied residential properties, H.B. 274 creates an exemption for those causes of action arising before July 1, 2014, providing that they "must be filed within 12 years after the date the action accrues or before July 1, 2017, whichever occurs first." *See* H.B. 274. Section 4.

2018 WL 816823, at *4.

Based upon the foregoing, the Debtor's contention that the amendment shortened the applicable limitations period from twelve years to three and that Wells Fargo's foreclosure is therefore barred, is without merit.  The Debtor testified that he defaulted on the Note and IDOT in July 2010.[19]  (12/14/2018 Tr. at 30-31).  Wells Fargo instituted a foreclosure action in August

---

[19] There is some dispute as to the exact date of default under the Note and IDOT (and hence the accrual of the claim) and Wells Fargo did not offer a notice of default into evidence.  On direct examination, the Debtor testified that the last payment he made on the Note and IDOT was to Wachovia (predecessor to Wells Fargo) in July 2010.  (Dec. 14, 2018 Tr. at 28).  Per the testimony of Mr. Flowers of Wells Fargo, based upon unrebutted business records, the Debtor's last payment was made in November 2010.  (*Id.* at 15; *see also* Creditor Exh. 4).  In any event, it is not necessary to determine the exact date of default to resolve the dispute as either time period is well within 12 years of the commencement of the foreclosure.

2013 and that proceeding remains alive, stayed only by virtue of the Debtor's bankruptcy filing. The foreclosure therefore began well before July 1, 2014, the statutory amendment's effective date. The Debtor offers no reason as to why the amendment should be applied retroactively and that is as it should be, because there is none. Thus, the enforcement of the Note and IDOT is not barred as untimely under the limitations' amendment.

The Debtor also contends that the filing of the Lift Stay Motion (and the POC) constitutes the commencement of a "civil action," that it is likewise time-barred by the amendment and therefore Wells Fargo may not "enforce" the indebtedness and lien in this Court by seeking stay relief. It would be a strange result indeed to conclude that Wells Fargo (or any other similarly situated lienholder) cannot take necessary steps in the bankruptcy court to permit the foreclosure of residential real estate because of the limitations amendment, when the Maryland legislature expressly says Wells Fargo can foreclose in light of the amendment's prospective application. Assuming no conflict of law, the mere filing of a bankruptcy case cannot be utilized to negate an express legislative directive. The question of how the amendment should apply is purely one of state law; the default and accrual happened well before this bankruptcy case was filed and the default and accrual are the relevant state law trigger points. To hold that Wells Fargo must now forego its accrued state law rights because of the bankruptcy "hoops" it must jump through as a result of the filing of an essentially frivolous Chapter 13 case would not be in keeping with the mandated prospective application of the amended limitations provision. It would be more like an artificial road-block, erected to pervert the legislative's will.

The Lift Stay Motion is, in this instance, no more than a necessary formality that must be adhered to before the foreclosure action can proceed. *See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914 (B.A.P. 9th Cir. 2011) (observing that stay relief motions are

14

"primarily procedural").  The narrow question presented by the Lift Stay Motion is whether

reorganization is possible.  Section 362(d)(2)(B).  *See Colvin v. Amegy Mortg. Co.*, 507 B.R.

169, 184 (W.D. Tex. 2014) (discussing the limited and summary nature of stay relief hearings

which do not involve full adjudication on merits of claims, defenses, or counterclaims); *In re*

*Hurst*, 409 B.R. 79, 83 (Bankr. D. Md. 2009) (same).  In that respect, this contested matter, *see*,

Rule 9014, retains its ancient character as a summary proceeding.  *See Estate Const. Co. v.*

*Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994) ("Hearings to determine whether

the stay should be lifted are meant to be summary in character.").

While legitimate state law defenses *could* be raised, the purpose here is not to enforce

substantive claims to a final judgment (as would be the case in an adversary proceeding) but

rather is simply to weigh the overall facts and circumstances to determine whether Wells Fargo

may carry on with the foreclosure action or the Debtor should be granted the automatic stay's

continued protection.  *See Hurst*, 409 B.R. at 83 (cautioning that court may consider

counterclaims that strike at core of movant's secured interest, but any such decision is

preliminary, pending an adversary proceeding and such determinations are not preclusive to later

proceedings).  Viewed another way, the Maryland legislature could not, consistent with the

Supremacy Clause, fix a limitations period for the filing of a motion under Section 362(d).  Now

having determined that the limitations amendment cannot apply retroactively to the previously

filed foreclosure, it would make no sense to hold that the same amendment bars the pending Lift

Stay Motion.  The accrual of the right to foreclose, and the pending foreclosure action, both act

as Wells Fargo's place markers for statute of limitations purposes and since the amendment must

be applied prospectively, the foreclosure proceeding must be permitted to move forward.[20]

---

[20] Likewise, the POC is permissible, and not barred by limitations, for reasons explained in Section (c), below.

There is therefore no reason to deny the Lift Stay Motion on the basis of the amendment to the Maryland statute of limitations.

(b)     *As the Note is a Document Under Seal, the Statute of Limitations is Twelve Years, not Three.*

Debtor also contends that "[i]f the witness signature and seal are missing on an instrument, the statute of limitations is reduced to three years". (Motion to Strike ¶11; Dkt. No. 84). It is true that the Note lacks witness signatures; however, the Note *does include* a "(Seal)" next to the Debtor's signature, and the same is true of the IDOT.[21] Yet, the Debtor persists in contending that *Wellington Co.*, *supra*, requires the imposition of a three-year limitations period. The textual language relied upon by the Debtor is not, however, that of the *Wellington* court but instead memorializes the reasoning of the lower court, and that reasoning was ultimately reversed by the decision in *Wellington*. The excerpted language reads in material part,

> Furthermore, the Court cannot ignore the fact that the Note was not witnessed. This is not insignificant when the words Plaintiff contends act as a seal, "witness the following hand and seal," are followed by blank witness lines in addition to the Defendants' signatures which do no have any additional indication of a following seal. In other words, the non-existent seal was not witnessed according to the Note in evidence.

*Wellington Co.*, 180 Md. App. at 587, 952 A.2d at 335. Applying that logic, the lower court held that the note in question was not under seal and therefore found that the limitations period was three years. The *Wellington* Court, however, did not rely upon the lower court's reasoning or, more significantly, affirm its decision. Rather, it reversed and found that the statute of limitations was 12 years in part because the deed of trust *was* under seal and it provided a

---

[21] His wife's signature on the IDOT is also under seal.

separate enforcement freeway, albeit to the same destination.  *Wellington*, therefore, does not aid the Debtor.

In this case, all of the signatures on the Note and IDOT are expressly made under "Seal", with the key word in parenthesis.  (*See* Creditor Exh. 1).  This is sufficient to place the documents under seal.[22]  *Warfield v. Baltimore Gas & Elec. Co.*, 307 Md. 142, 143, 512 A.2d 1044, 1044 (1986) (holding that inclusion of the word "seal" in a pre-printed form executed by an individual is sufficient to make the instrument one under seal).  Consequently, the twelve-year statute of limitations applies and the Debtor's objection to the POC on this basis is overruled.

(c)     *The Debtor's Prior Bankruptcy Discharge does not Negate Wells Fargo's Ability to Enforce its Unsatisfied Lien Against Hunt Crossing*

The next contention of the Debtor is baffling.  According to the Debtor, the Note and IDOT were discharged in the Debtor's prior Chapter 7 bankruptcy and Wells Fargo's attempt to enforce them in this case against Hunt Crossing, in part through the POC, violates Section 524(a)'s discharge injunction.  Debtor's Counsel was told repeatedly that this contention is completely is frivolous and that assessment has not changed.  *Johnson v. Home State Bank*, *supra*, held,

> The Court of Appeals thus erred in concluding that the discharge of petitioner's personal liability on his promissory notes constituted the complete termination of the Bank's claim against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving intact another -- namely, an action against the debtor *in rem*.

501 U.S. at 84; *accord Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) (liens on real estate pass through bankruptcy unaffected).

---

[22] The "witness" signature lines on the Note are blank, but no authority was cited to the effect that the twelve-year limitations period is nullified as a result.

Barring a non-frivolous challenge from the Debtor, Wells Fargo had every right to enforce its claim and lien in this case.  In the unlikely event that the Debtor had the ability to pay the debt, and thereby retain Hunt Crossing through a confirmed plan, he would have to pay the full balance due, including the $700,000 + arrearage.  See 11 U.S.C. §1322(b)(2).  Hence, the filing of the POC was not only legitimate, it was *necessary* to that end as a claim must be filed in order for Wells Fargo to be paid though the Plan.  And since the Debtor's prior discharge of personal liability had no impact whatsoever on the lien against Hunt Crossing, Wells Fargo was absolutely entitled to take steps – in this instance, prosecute the Lift Stay Motion – to resume the long-ago filed foreclosure action.  The Debtor's contention that Wells Fargo's attempted enforcement of the indebtedness due against Hunt Crossing is inappropriate, and indeed, contemptuous, is completely frivolous in light of the facts of this case and settled law. Accordingly, there is no reason to either deny the Lift Stay Motion, or sustain the Second Objection, on that basis.

> (d)     *Wells Fargo's Application of the Note's Pick-a-Payment Provision is not Fraudulent, is Reasonable, and is in Keeping with the Language of the Note, and Does not Constitute a Material Alteration.*

The Debtor's contention that Wells Fargo materially altered the Note by misapplying the "Pick-a-Payment" provision is equally as meritless as the prior contentions already examined. On February 14, 2008, the Debtor executed the Note.[23]  (Creditor Exh. 1).  Per its terms, payments of principal and interest were required every month until all principal, interest, any other charges due under the Note, and the IDOT, were paid.  (Note ¶4(A)).  As indicated at paragraph 4(B) it was *the Debtor* who selected the initial, monthly payment amount of

---

[23] The Note "self-identifies" as a "3 Year Fixed Rate Pick-a-Payment Loan".

$4,916.91, with payments to begin on March 15, 2008.[24]  It was expressly acknowledged in that paragraph that, depending upon the selected monthly payment amount, the interest paid each month might be insufficient to pay the entire interest that actually accrued.  The "Deferred Interest" provision therefore reads as follows:

> From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due.  If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(Note ¶4(E)).[25]

First and foremost, it cannot be over-emphasized that MD CL §§3-407(b), relied upon by the Debtor, *requires a fraudulent* material alteration in order for the particular instrument to be nullified.  Thus, no matter how Paragraph 4(E) is interpreted, or the "off-loading" of unpaid interest viewed, the question of nullification cannot even be addressed without the presence of fraud.  Yet, the Debtor neither made allegations, nor offered evidence, that Wells Fargo fraudulently altered the Note.  Hence, the consideration of the Note's mechanics – how unpaid interest should be applied – becomes a virtual, academic exercise.  Nevertheless, the frayed ends of the Debtor's contentions should be firmly tied so confusion going forward will be kept to a minimum, if not eliminated entirely.[26]

---

[24] That amount should be contrasted against the present monthly payment of $7,817.65.  The Note thus appears to be flotsam left behind from the Great Recession, a train-wreck waiting to happen.

[25] It is unclear whether this provision is a redundancy in light of Paragraph 4(B), which acknowledges that the selected monthly payment may not be sufficient to pay the total interest accrued, or, is intended to provide the option of making even smaller monthly payments than the original "Pick-a-Payment" amount selected.  Truly, reasonable minds could decide either way, but neither alternative lends support to the Debtor's interpretation.

[26] And even if the Debtor's interpretation was correct, there was no explanation as to how the addition of mass quantities of unpaid interest to the unpaid principal would benefit the Debtor.  Either way, the result would leave a mountain of unpaid arrears, due and owing.

At bottom, the Debtor's assertion is that Wells Fargo was "pigeon-holing" his massive unpaid interest accrual in a manner different from how he believed it should be categorized. During cross-examination, Mr. Flowers explained how the clause operates.

> Q. (Mr. Johns):  I will direct your attention to…Paragraph E, page 3.  [It] is titled "Deferred interest conditions [sic][27] to unpaid principal".  [C]an you tell us in layman's terms what it means?
>
> A. (Mr. Flowers):  If a payment is made and it is not enough to make a full payment, then we will defer the remaining interest into the principal balance.
>
> Q.  …Why does your proof of claim still show the principal balance as the original principal balance without the deferred interest added?
>
> A.  So it doesn't – there has been principal added.  So there has been multiple deferred payments that have been made and all of those payments have been added to the principal balance.
>
> \*        \*        \*
>
> Q.  And what does the proof of claim have as your principal balance?
>
> A.  $1,181,337.43.  So basically it is increased by $60,000.
>
> Q.  Does that seem right to you over five years of non-payments?
>
> A.  Yes, because the only time money gets added is if you make a payment.  So there have been three years worth of payments that have been made, so every time there would have been $1,500 roughly added into principal balance.

Transcript of December 14, 2018 hearing at pp. 23-24.[28]

---

[27] This word should be "additions".

[28] Debtor's Counsel went on to make the point that if all the unpaid interest for missed payments (approximately $300,000, by his calculation) was added to the principal balance, it would inflate the principal balance by significantly more than $1.1 million.  The Court agrees with this observation, but the mystery remains as to why this helps the Debtor.

Mr. Flowers explanation – that interest is deferred only when *some* monthly payment is made – is in line with the express language of Paragraph 4(E) ("From time to time, my monthly payments may be insufficient…").  Paragraph 4(A) requires the borrower to pay principal and interest *every month*, however, when an "insufficient" *payment* is made – a payment of "less than", as opposed to "none of", the total monthly principal and interest due – then, the interest is deferred to the principal and will thereafter incur interest at the same rate as the principal. Paragraph 4(E) tellingly refers to only deferred interest and makes no provision for "deferred principal".  Mr. Flowers explanatory testimony as to the requisite circumstances for interest deferral was unrebutted and is fully consistent with the language of paragraph 4.

The Debtor would have this Court conclude that the principal balance should be expanded by at least an additional $300,000 and because Wells Fargo did not account for unpaid interest that way, the Note and IDOT should be nullified.  But frankly, without a rehabilitation plan that could somehow solve the problem, how the unpaid sums were stockpiled does not matter.  And the Debtor most assuredly does not have such a plan.  Accordingly, and especially without a scintilla of evidence of fraud, the Debtor's contentions are frivolous and provide no basis to deny the Lift Stay Motion or sustain the Second Objection.

*(e)*     *The Debtor has not Made an Intelligible Case for Relief Under Rule 3002.1(b) and No Relief will be Afforded*

Debtor contends that Wells Fargo did not give proper notice of changes in payment as required by Rule 3002.1(b).  The Rule provides:

(b)     Notice of Payment Changes; Objection.

(1)     Notice. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest

21

> rate or escrow account adjustment, no later than 21
> days before a payment in the new amount is due.

Failure to provide the notice as required may result in the lienholder being precluded from presenting the omitted information as evidence, or suffering other appropriate relief, including the imposition of attorney's fees and costs, caused by the failure.  Rule 3002.1(i). However, the Debtor has not identified either any violation of the Rule on the part of Wells Fargo, or any alleged harm caused as a result of the non-existent impropriety.  And it must be noted that even if the Debtor did identify a rule violation, it would be tough to reason why such an event would make a difference in light of the Debtor's failure to make any post-petition payments.  Accordingly, the Court concludes there is no basis for finding a violation of Rule 3002.1(b) and no sanctions will be imposed.  *See In re Tollios*, 491 B.R. 886, 892 (Bankr. N.D. Ill. 2013) (declining to impose sanctions where the failure to file and serve notice per Rule 3002.1(b) did not harm debtors and had no impact on the debtors' case).

(f)      *Wells Fargo's Request for In Rem Relief will be Granted.*

The Debtor has not made a payment under the Note since 2010 and his assertions as to why the Wells Fargo should not be permitted to enforce the obligation against Hunt Crossing are frivolous.  Under the circumstances the Court concludes that Wells Fargo's Lift Stay Motion should be granted and that its request for *in rem* relief in the form of an equitable servitude is completely justified.  This is so because

1.      The Debtor's plan is objectively futile;

2.      The Debtor has already secured a personal discharge of the underlying debt, thus elevating Wells Fargo's risk;

3.      The Debtor has not prosecuted this case in good faith as each argument raised is frivolous in failing to acknowledge either the weight or truth of existing law or the futility of the end sought; and

4.      As a result, this case has caused inordinate, unjustified delay.

Accordingly, the Lift Stay Motion will be granted and an equitable servitude will be afforded for a period of three hundred sixty-five (365) days from the entry of the Order memorializing the ruling included in this Opinion.

**III.      Conclusion**

In conclusion, (a) the Co-Debtor Response will be denied as the deficiency relied upon was cured by Wells Fargo (Dkt. No. 77), (b) the Admissions Motion will be denied for the reasons explained above, (b) the SJ Motion will likewise be denied, (c) the Second Motion to Strike will be denied, (d) the Second Objection will be overruled, (e) the POC will be allowed and the Lift Stay Motion will be granted with an *in rem* bar against re-filing of 365 days from the entry of the Order memorializing this ruling.

cc:      Kosmos Nicholas Johns, Esquire
         Law Office of Kos N. Johns
         11820 Parklawn Drive, Suite 350
         Rockville, MD 20852

         Renne Dyson, Esquire
         Shapiro & Brown, LLP
         10021 Balls Ford Road, Suite 200
         Manassas, VA 20109

         Robert S. Thomas, II, Esquire
         300 E. Joppa Road, Suite 409
         Towson, MD 21286

         John Kelly Ihejurobi
         11405 Hunt Crossing Ct.
         Ellicott City, MD 21042

         Neesha Ihejurobi
         11405 Hunt Crossing Ct.
         Ellicott City, MD 21042

**End of Opinion**